[No. 24649. *En Banc.* May 25, 1934.]

NICK GOOSCHIN, *Respondent,* v. ANDREW B. J. LADD, *Appellant.*[1]

[1]Reported in 33 P. (2d) 653.

626

*Shank, Belt & Rode,* for appellant.

*Kahin & Carmody* and *Paul Coughlin,* for respondent.

MAIN, J.—This action was brought to recover damages for personal injuries and for medical and hospital expense. The case was tried to the court and a jury, and a verdict was returned in favor of the plaintiff in the "sum of expense $2,575.95 and $20,000 damages." The defendant moved for a judgment notwithstanding the verdict, and also for a new trial, both of which motions were overruled. Judgment was entered upon the verdict in the sum of $22,575.95, from which the defendant appeals.

The facts are these: The accident happened January 18, 1932, at about 12:45 a. m., about one-half mile north of the city limits of the city of Seattle, and near the intersection of Victory way and what is called east 95th street. Victory way is paved to the width of twenty-seven feet, and may be said to extend north and south, though this is not quite accurate. 95th

street extends east and west. On either side of the pavement on Victory way, there was a dirt or gravel shoulder. Beyond the shoulder on the east side of Victory way, there was a shallow ditch.

A short time prior to the accident, the respondent was proceeding north on Victory way in a Hudson sedan, accompanied by two young ladies. When about thirty feet north of 95th street, he stopped, due to the fact that a heavy rain was falling, and concluded to turn around and return to the city. He attempted to back the automobile, which went off of the pavement and stuck in the mud of the ditch and shoulder, and he was unable to remove it therefrom. The traffic at this hour of the night was light, but a number of automobiles were passing, and the drivers of some of them stopped and rendered aid, but they had been unable to move the Hudson from its position. One of the drivers of the automobiles attempted to pull the Hudson out of the mud by means of a rope, which broke. After this, the respondent sent to a garage for a wrecking car to come out and pull his automobile out of the mud.

Before the wrecking car arrived, and while the respondent was standing at the left front of his car leaning over the fender and removing the broken rope, the appellant approached on Victory way from the south at a speed of twenty-five or thirty miles per hour, the right front of his automobile struck the respondent and the left front of the Hudson, and the respondent sustained the injuries for which recovery is sought in this action.

Shortly before the appellant's car arrived, an automobile driven by Roy S. Clark approached from the north. One of the young ladies in the Hudson car, seeing the car approaching, got out and walked across the pavement and flagged it. The Clark car stopped

practically opposite the Hudson, and was standing there when the collision occurred. Subsequent to the time of the accident and prior to the time of the trial, the dirt or gravel shoulder on the east side of Victory way had been widened.

The facts with reference to the extent of the injury will not be stated, because there is here no complaint as to the amount of the verdict. Facts other than those recited will be stated in connection with the consideration of the particular points to which they may be germane.

■ It is first contended that the respondent was guilty of contributory negligence, as a matter of law. The evidence upon the question as to whether the left front of the Hudson was off or on the pavement is in dispute. The respondent says that the left front of the Hudson was

". . . about two or two and a half feet from the pavement. I am quite certain of that. I was standing in that parking, between the pavement and my front, left front. I was clear off the highway. My lights were working that night. They were on all the time. They were on at the time that I last remember. I did not at any time see this car that struck me. I never saw it. I did not see it before I got out of the car. I looked around and I couldn't see anything. I didn't see anything approaching then."

Other witnesses testified that the left front of the respondent's car extended out onto the pavement about four feet. If the respondent's car was entirely clear of the pavement and he was standing in the space between the edge of the pavement and the car, we see nothing upon which to base the charge of contributory negligence. The respondent's testimony that the car was off the pavement was sufficient to take the case to the jury.

■ The fact that the respondent in his original complaint alleged that the left front of his automobile was on the pavement, and in his amended complaint, upon which his case was tried, alleged that it was off the distance of two or three feet, does not destroy the credibility of his testimony as a matter of law. *Allen v. Blyth,* 173 Wash. 409, 23 P. (2d) 567. In addition to this, there was testimony explaining the reason for the discrepancy between the two complaints. The weight to be given to the respondent's testimony was a matter for the jury to determine.

■ It is next contended that it was error for the trial court to refuse a requested instruction to the effect that, if the jury found from a preponderance of the evidence that the respondent's car was extending over onto the paved portion of the highway at the time of the accident, there could be no recovery. If the respondent's car was extending over onto the pavement about four feet and he was standing at the side thereof, leaning over the left fender, there is an analogy between this case and the recent case of *Thornton v. Eneroth, ante* p. 1, 30 P. (2d) 951, where it was held that the plaintiff was not guilty of contributory negligence, as a matter of law, but that the question was one for the jury. The cases of *Colvin v. Auto Interurban Co.,* 132 Wash. 591, 232 Pac. 365, and *Davis v. North Coast Transportation Co.,* 160 Wash. 576, 295 Pac. 921, are to the same effect.

There is no analogy upon the question of contributory negligence between the case that we are now considering and the case of *Turner v. Good,* 167 Wash. 27, 8 P. (2d) 414. In that case, the plaintiff was held to be guilty of contributory negligence as a matter of law because, after leaving the automobile, he had become a pedestrian and was proceeding along the

highway in violation of Rem. Rev. Stat., § 6362-41, subd. 6. The respondent in this case, even if the fact be that the left front of the automobile was on the paved portion of the highway, was not a pedestrian within the contemplation of that statute. *Chapen v. Stickel,* 173 Wash. 174, 22 P. (2d) 290. The trial court did not err in refusing to give the requested instruction.

It is next contended that the court erred in admitting in evidence certain photographs. These were taken subsequent to the accident and after the shoulder had been widened. They showed the general situation and the shoulder as it existed at the time they were taken. They were offered in evidence, not for the purpose of showing the condition of the shoulder, but as showing the "conditions that surrounded that road." In admitting them, the court expressly instructed the jury that they were offered for the sole and limited purpose of showing the nature and condition of the highway, and that the jury were not to draw any inference from them as to the nature, extent or condition of the shoulder at the time of the accident. Two witnesses, testifying from the photographs, indicated where the line thereon would be between the outer edge of the old and the new shoulder.

When the photographs were offered, there was presented to the court a preliminary question to be decided by it which involved an element of discretion or judgment which ordinarily will not be disturbed by the reviewing court. *Skaling v. Sheedy,* 101 Conn. 545, 126 Atl. 721; *Mayor & C. C. of Baltimore v. State,* 132 Md. 113, 103 Atl. 426. The cases of *Oriental Express Co. v. Puget Sound Tr., L. & P. Co.,* 113 Wash. 520, 194 Pac. 781, and *Finholt v. Seattle,* 139 Wash. 497, 247 Pac. 950, go no further than to hold that in

those cases the court did not err in refusing to admit the photographs. The court did not err in admitting the photographs.

· ■ It is next contended that the court erred in submitting to the jury the question of whether the windshield swipe on the appellant's car was defective. In considering this question, it will be assumed, but not decided, (a) that the instructions submitted the question of the windshield swipe to the jury, and (b) that, if there was no substantial evidence showing the defective condition thereof, it was reversible error so to do. Giving effect to these two assumptions, we shall go to the question of the evidence on the matter. An automobile mechanic, who examined the appellant's car five or six days after the accident, testified:

"The swipe wasn't working at all as much as I could see. . . . I examined an Overland car out on the highway there five days after the accident. It was on my own accord the first time. I said I looked at the windshield swipe and it was not working because the hose was cracked. I did not try it. . . . With the hose torn as this was, the swipe couldn't work. It was not a slight crack. It was such that half the hose was almost off, right underneath the dashboard. The swipe is by the windshield, and right underneath the dashboard where it was bent down was a crack there. I couldn't tell you whether it was a fresh crack. You can't tell with rubber whether it is fresh or not. I just looked at it, that is all, and I saw the crack. I wanted to go over the swipe to determine whether or not it would work. I didn't take it apart. With a cracked hose like that it is not right to work at all. When there is no vacuum working that swipe, it will cause the swipe not to work. That swipe could not be worked in that condition, unless the hole would be clogged up. I couldn't tell you whether the swipe was working five days before I examined the car or not. It might have been cracked right after the accident."

The witness Clark, above mentioned, testified:

"The evening following the accident I went out to Mr. Ladd's house and I saw his car. I observed the windshield of that car. It was generally muddy except where the swipe was. There were marks on the windshield where the swipe had cleaned the rain and mud off. The marks on a windshield indicate something to me. . . . The mark was a half moon shape. I would say it was fairly clean, cleaner than the rest of the windshield."

The appellant testified that the lights on his automobile were in good condition; that, as he approached the place of the accident, he was looking straight ahead, and that he did not see the Hudson automobile until the instant of impact, when it loomed up in front of him. Clark, who approached from the opposite direction and who was flagged by the young lady, testified that, when she came within the radius of his headlights, he could see her a distance of one hundred feet away. If Clark, by the aid of his headlights, could see the young lady one hundred feet distant, there does not appear to be any reason why the appellant could not have seen the Hudson, as he approached it, if his headlights were good and he was looking straight ahead, as he testified. It seems to us that, when consideration is given to everything that each of the two witnesses, who examined the windshield swipe, said about it, and with this is taken into consideration the fact that Clark could see and the appellant did not, there was substantial evidence from which the jury could conclude that the windshield swipe was defective. The giving of the instruction was not error.

It is next contended that the court erred in giving what is referred to as instruction No. 8, which, in all essential particulars, is a duplicate of an in-

struction given in the case of *Lindsey v. Elkins*, 154 Wash. 588, 283 Pac. 447. It is said, however, that, since the instruction in that case was not excepted to, it was not approved in the decision. In that case, there was a requested instruction in the language of the statute, which was refused, and the ruling was excepted to. The question presented was whether it was error to refuse the requested instruction, and this depended upon whether the instruction given correctly embodied the thought contained in the statute. It was there said:

"The language of the statute is technical, and, if the instruction given had been a verbatim copy of the statute, would not have been more informative than the instruction given in the language of the court, language that the average person could understand. The jury were instructed that the law required the respondent's automobile to be equipped with headlights so adjusted that, under normal atmospheric conditions, an object would be rendered clearly discernible on the highway two hundred feet distant. That is the substance of the statute."

In this connection, it is said that there was no evidence to justify the submission to the jury of the question of insufficient lights. But we find no merit in this contention. There was no error in the giving of instruction No. 8.

Finally, it is contended that the appellant was prejudiced by reason of the fact that the court, in two or three different instructions, stated that the statutory limit of speed was forty miles an hour. This was merely an abstract statement of the law, made incidentally, and could not possibly affect the appellant adversely. An instruction is not prejudicially erroneous which merely states correctly an abstract proposition of law, but does not submit to the jury an issue upon which there is no substantial evidence. *Gabriel-*

*sen v. Seattle,* 150 Wash. 157, 272 Pac. 723; *Tenneson v. Kadiak Fisheries Co.,* 164 Wash. 380, 2 P. (2d) 745; *Stokes v. Magnolia Milling Co.,* 165 Wash. 311, 5 P. (2d) 339.

The judgment will be affirmed.

BEALS, C. J., TOLMAN, BLAKE, HOLCOMB, MITCHELL, and GERAGHTY, JJ., concur.

MILLARD, J. (dissenting)—I dissent.

The accident occurred January 18, 1932. The complaint, served by respondent on appellant February 1, 1932, alleged that respondent's automobile was disabled, "stuck in the ditch," and was partially on and partially off of the paved portion of the highway. There was evidence that, at that time, the shoulder of the road at the point of the occurrence of the accident was about two and one-half feet wide; that is, the complaint was not inconsistent with the situation which witnesses testified existed at that time. In the spring of 1932, the shoulder was widened to such an extent that an automobile could park thereon clear of the paved portion of the highway. Thereafter and about one month prior to the trial of this cause, the respondent amended his complaint to allege that his automobile was entirely off of the paved portion, and on the shoulder, of the highway.

The jury should not have been permitted to see the photographs showing the widened shoulder. The pictures disclosed a decidedly different condition where the accident occurred than that at the time of the accident. *Oriental Express Co. v. Puget Sound Tr. L. & P. Co.,* 113 Wash. 520, 194 Pac. 781. The offer in evidence of the photographs presented, the majority opinion states,

". . . to the court a preliminary question to be decided by it which involved an element of discretion

or judgment which ordinarily will not be disturbed by the reviewing court."

I agree that the question as to the admissibility of the photographs in evidence was one for the determination of the trial court, "and will not ordinarily be revised on appeal." 10 R. C. L. 926.

"It may be stated as a general principle that whatever, to the ordinary reasoning mind, is logically probative of a fact in issue, is prima facie admissible and should not be excluded unless its admission is in conflict with some principle of law or in violation of some rule of policy. Evidence, however, must relate to and be connected with the transaction it is offered to elucidate, and this connection must be immediate, and not remote or far-fetched. . . .

"It is an established rule, governing the production of evidence, that the evidence offered must correspond with the allegations, and be confined to the point in issue. It is not necessary, however, that the evidence should bear directly upon the issue. *It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof.*" (Italics mine.) 10 R. C. L. 926-928.

The question for the determination of the jury was whether on January 18, 1932, the shoulder was of a width that would permit respondent's automobile, as respondent alleged and testified, to be parked thereon with all four wheels of the automobile off of the paved portion of the highway. It is a rule, so uniformly followed as to need no citation of sustaining authority, that the object to which testimony relates may be brought into court and exhibited when this can be done. As a preliminary to the introduction of any object in evidence, it must appear, however, that such object has not undergone any change by reason of lapse of time, or otherwise, since the time in issue. 10 R. C. L. 992.

A photograph of the scene of an accident is not admissible in evidence unless it is taken under conditions sufficiently similar to those at the time of the accident as to make such photograph an accurate representation of the situation at the time of the accident. The pictures were not taken under conditions sufficiently similar to those at the time of the accident, and their admission in evidence could not other than confuse the jurors or convince them that the photographs taken after the shoulder was widened was a true representation of the situation at the time of the accident; that the respondent's automobile was off of the pavement at the time of the collision. The court's admonition to the jury respecting the photographs could not cure the error committed in admitting them in evidence.

The instruction as to the windshield equipment was prejudicially erroneous if, as appellant contends, it submitted for the determination of the jury an issue about which there was no controversy or upon which there was no substantial or competent evidence. *Parton v. Barr,* 168 Wash. 60, 10 P. (2d) 566.

The court instructed the jury that the respondent in his complaint charged the appellant with several acts of negligence, among which was that the appellant failed

". . . to have the windshield of his automobile equipped with a cleaning device for cleaning rain, and sufficient to afford the operator clear vision ahead."

The jury were further instructed:

"If the plaintiff satisfies you by a fair preponderance of the evidence that the defendant was guilty of negligence in one or more of the particulars alleged in the complaint, and that such act or acts of negligence was or were the proximate cause of the accident, and of plaintiff's injuries and damages, if any,

then your verdict must be in favor of plaintiff, if you find he was not guilty of contributory negligence.

. . .

"You are instructed that under the statutes of the State of Washington regulating the operation of motor vehicles, every windshield of a motor vehicle shall be equipped with a device for cleaning rain, snow, or other moisture from the exterior portion of the windshield sufficient to afford the operator clear vision ahead, which device shall be controlled or operated by the driver of the motor vehicle."

Though respondent alleged negligence on the part of appellant in failing to comply with the statutory requirement respecting equipment of each motor vehicle with a windshield-cleaning device, there was no competent evidence to support that allegation.

Appellant's automobile was equipped with a windshield-cleaning device. One witness testified that he examined that automobile twenty hours after the accident. His inspection disclosed that the windshield was "generally muddy except where the swipe was" and that the portion of the windshield over which the swipe would operate was cleaner than the remainder of the windshield; that it was "fairly clean." Another witness, an automobile mechanic, testified that he examined appellant's automobile five or six days after the accident, at a garage in which the automobile was placed the night of the accident and where it remained until after that examination. This witness found a big crack in the hose which feeds the swipe—so large that it would prevent operation of the swipe. His testimony is quoted in the majority opinion. There was no other testimony as to the sufficiency of the windshield swipe.

Appellant's automobile, proceeding at the rate of twenty-five or more miles an hour, collided with re-

spondent's car on its right-hand side of the road and then caromed off and hit another car on its left-hand side. As a result of the collisions, one would be likely to find a break in any part of the mechanism of appellant's automobile. The fact that there was such a break in the mechanism of the automobile after the collisions is not competent evidence of the existence of such break prior to the collisions. *Frowd v. Marchbank,* 154 Wash. 634, 283 Pac. 467.

The majority argue that, as one witness testified that, by the aid of his headlights, he could see a person one hundred feet distant on the night in question, and as appellant testified his headlights were not defective, it does not appear to be reasonable for the appellant, if he was looking straight ahead, to have failed to see respondent's automobile as he approached it; that the evidence respecting the windshield swipe was admissible because, if the headlights of appellant's automobile were good and he was looking straight ahead, he could have seen respondent's automobile if his windshield swipe had not been defective; and that, if the windshield swipe were not defective, the headlights were insufficient, otherwise the appellant would have seen respondent's automobile.

The accident occurred on a stormy night. The majority presume that, because, at the instant, the witness saw a person straight ahead a distance of one hundred feet, the appellant, a short time later, should have seen the respondent's automobile. That conclusion, inference or presumption serves as a base for the further presumption that the appellant could have seen the automobile if his windshield had not been defective. The further presumption is indulged that appellant could have seen if his headlights had not been defective, and on this chain of presumptions the

majority holds that evidence which the courts have uniformly decided is incompetent is admissible.

When the existence of a state of things is once established by proof, the law presumes that the state of things continues to exist as before until the contrary is shown, or until a different presumption is raised from the nature of the subject in question. 10 R. C. L. 873. It is not, however, a legitimate inference that, because at one instant on a stormy night one person may see an object a certain distance, another person a few minutes later must have also seen the same object if he had looked.

I am also convinced that the respondent was guilty of contributory negligence which bars his right to recover, and that the action should be dismissed. In any event, the judgment should be reversed and the cause remanded for a new trial.

STEINERT, J., concurs with MILLARD, J.