[No. 29796.  *En Banc.*  January 6, 1947.]

GERALD LAMB, *as Administrator and Individually, Respondent,* v. F. P. MASON *et al., Appellants.*

DARYL EVANS *et al., Respondents,* v. F. P. MASON *et al., Appellants.*[1]

*McMullen & Snider,* for appellants.

*Everal Carson,* for respondents.

[1] Reported in 176 P. (2d) 342.

JEFFERS, J.—Gerald Lamb, as administrator of the estate of his wife, Odetta Lamb, deceased, and individually, instituted an action in the superior court for Clark county against R. C. Sugg, F. P. Mason, Morris Swan, John Blaker, Roy McKee, and Jane Doe Hill, doing business under the firm name and style of Vancouver Bus Company, and Eugene Allison and Alva L. Shaw.

It is alleged in the amended complaint that plaintiff is the duly appointed, qualified, and acting administrator of the estate of his wife, Odetta Lamb, deceased.

It is further alleged that Fourth Plain road is an arterial highway within the city limits of Vancouver, Washington, running in a general easterly and westerly direction; that Grand avenue is a public thoroughfare within the city limits of Vancouver but not an arterial; that these two highways intersect in East Vancouver, forming the intersection at Forth Plain road and Grand avenue.

It is further alleged that on October 29, 1944, at approximately 1:30 a. m., plaintiff and his wife were riding in an automobile owned and then being operated by Earl Chase, driving westerly along Fourth Plain road toward Grant avenue; that plaintiff and wife were riding as guests of Earl Chase.

It is further alleged that at that time defendants Allison and Shaw, as the agents, servants, and employees of Vancouver Bus Company, were operating two large semi-trailer passenger busses at a high, dangerous, and excessive rate of speed, in a northerly direction along Grand avenue.

It is further alleged that the car operated by Earl Chase entered the intersection of Fourth Plain road and Grand avenue, and as it entered the intersection the two semi-trailer busses, running almost abreast, without regard to the arterial highway, and without regard to Earl Chase being on their right, ran across Fourth Plain road, causing the Chase car to collide with the first of the semitrailer busses; that the second bus, passing the first on the right-hand side and in the intersection, ran into and upon the car driven and operated by Earl Chase, causing the damage hereinafter complained of.

The acts claimed to constitute the negligence of defendants are then set out.

The amended complaint then alleges:

"That as a direct and proximate result of the above alleged specifications of negligence, Odetta Lamb was killed, to the damage of the plaintiff and their infant daughter in the sum of $22,500.00 general damages, and $500.00, special damages.

"That as a direct and proximate result of the said accident and the above specifications of negligence, plaintiff, Gerald Lamb, *personally suffered injuries* to his damage in the sum of $3500.00 and loss of wages to his damage in the sum of $244.80.

"WHEREFORE, plaintiff prays the court for judgment against the defendants, individually, and collectively, in the sum of $22,500.00 for the death of Odetta Lamb, and $500.00, special damages and for $3500.00, personal injuries to himself and for $244.80 loss of wages, together with his costs and disbursements in this action to be taxed." (Italics ours.)

On February 2, 1945, on motion of plaintiff, defendants R. C. Sugg and John Blaker were dismissed from the action.

Defendants, by their answer filed February 8, 1945, denied all the material allegations of the amended complaint, and affirmatively alleged that the proximate and direct cause of the accident was the negligence of the operator of the Chase car. It is further alleged in the answer that plaintiff Gerald Lamb and his wife, Odetta Lamb, were riding in the automobile in connection with a joint adventure entered into by them and Earl Chase and others.

Plaintiff by his reply denied all new matter set out in defendants' answer.

On January 31, 1945, Daryl Evans and Kathleen Evans, his wife, commenced an action in the superior court for Clark county against the same defendants named in the Lamb action. The allegations of the complaint in this action are the same as in the Lamb complaint, except that it is alleged that, at the time and place of the accident, Mr. and Mrs. Evans were also riding with Earl Chase as his guests. It is alleged in this complaint:

"That as a direct and proximate result of the above al-

leged specifications of negligence, Kathleen Evans suffered injuries consisting of displacement and sprain of her sacroiliac, and fractured vertebra, bruises, cuts, and contusions to plaintiffs general damage in the sum of Fifteen Thousand Dollars ($15,000.00) and hospital expenses and other special damages . . . in the sum of Seven Hundred Fourteen Dollars and Seventy Cents ($714.70)."

R. C. Sugg and John Blaker were, on motion of plaintiffs, dismissed from this action.

Defendants, by their answer in this action, denied all the material allegations of the complaint and made the same affirmative allegations as in the Lamb case.

Plaintiffs, by their reply, denied the new matter set up in the answer.

On May 28, 1945, the court made an order consolidating these two cases for the purpose of trial and directing that the trial proceedings be carried on under No. 21123, the superior court file number of the Evans case. On the same day, the consolidated action came on for trial before the court and jury.

In view of the conclusions we have reached in this case, we do not deem it necessary to refer to the testimony, other than that of Gerald Lamb and Kathleen Evans.

Gerald Lamb, testifying in support of the allegations of his amended complaint, testified, among other things, to the personal injuries claimed to have been sustained by him as a result of the accident; that he was unable to work for about three weeks, stating the amount he earned when working. He also purported to testify to the funeral expenses of his wife. However, his testimony as to the last item was very indefinite.

Kathleen Evans testified in support of the allegations of the complaint in the Evans case, and, during her direct examination, the following questions, among others, were propounded to her:

"MR. CARSON (attorney for plaintiffs): Well, before the accident could you do your housework? A. Absolutely. Q. Have you been able to do your housework since?"

Mr. McMullen, of counsel for defendants, made the following objection:

"I object to that, if the Court please. There is no claim here for any permanent or continuing injuries or damages. They brought suit here for injuries she sustained at the time of the accident."

A colloquy then took place between counsel for the respective parties, after which the court stated:

"Well, I think proof of disability directly resulting from the claimed injury prior to the date of the complaint would be proper as showing the extent of the injuries, *but not up to date*. The complaint claims no permanent disability or continuing disability." (Italics ours.)

The above ruling of the trial court was apparently accepted by all parties, and no further proof as to the permanency of Kathleen Evans' injuries was attempted to be made in the Evans case, and, of course, the question was not opened up by defendants.

The following is a part of instruction No. 1 as given by the court:

"This is a combined trial of two actions in one of which Daryl Evans and Kathleen Evans, husband and wife are plaintiffs. In the other action, Gerald Lamb as administrator of the estate of his wife and Gerald Lamb individually join as the plaintiffs, *but under the evidence there is no recovery possible for Gerald Lamb individually* and therefore Gerald Lamb as administrator is the sole plaintiff." (Italics ours.)

It is further stated in instruction No. 1:

"Plaintiff Lamb claims that Odetta Lamb was killed as a result of the collision and that he himself was personally injured as detailed to you in the evidence and lost wages as a result; that they have an infant daughter and that the husband and daughter were damaged in the sum of $22,-500.00 general damages and $500.00 special damages and that the plaintiff was further damaged by reason of his own personal injuries in the amount of $3500.00 general damages and loss of wages in the amount of $244.80."

We shall now set out instruction No. 13, and desire to call attention to this instruction, particularly to what is said relative to plaintiff's right to recover in the Lamb case.

Instruction No. 13:

"If you find that the plaintiffs or either of them are en-

titled to recover for any personal injuries, you will proceed to fix the amount of damages to be awarded. In doing so, you should take into account *the nature and extent of the injuries to Gerald Lamb* or to Kathleen Evans, *the pain and suffering which each has endured, and the permanency or temporary character of their injuries.* You should give only such damages as will justly compensate each plaintiff, compensation being the measure of the damages. You may also allow in the Lamb case such reasonable amount as you may find *he suffered by reason of loss of wages."* (Italics ours.)

It will be noticed that in instruction No. 1 the court instructed the jury that there could be no recovery for Gerald Lamb individually, but only as administrator of his wife's estate, yet in instruction No. 13 the court informed the jury that "you should take into account the *nature and extent of the injuries to Gerald Lamb,"* and also that "you may also allow in the Lamb case such reasonable amount as you find he suffered by reason of loss of wages."

It seems apparent that the above-quoted part of instruction No. 13 could not have referred to the recovery for the death of Odetta Lamb, for in instruction No. 14, where the court specifically referred to the damages, if any, to be allowed for the death of Odetta Lamb, it is stated:

"In fixing these damages, you are instructed that as to the husband (Gerald Lamb) you may take into consideration the loss of love, affection, care, services, companionship, society and consortium, if any, sustained by him by reason of the death of his wife."

We desire also to quote instruction No. 15 as given:

"In case you find for the plaintiff in the Lamb case and it thus becomes necessary to segregate the amount of damages awarded to the plaintiff, therein, you are instructed that all damages by way of funeral expenses of the deceased wife and for the personal injuries of Gerald Lamb are to be segregated to the estate and that all damages to Gerald Lamb by reason of the wrongful death of his wife are to be segregated to him and that all damages of the child of Gerald Lamb by reason of the wrongful death of its mother are to be segregated to the child."

On May 29, 1945, the jury returned a verdict in favor of

Mr. and Mrs. Evans for eight thousand dollars, and a separate verdict in the Lamb case, as follows:

"For the estate $1244.80
"For Gerald Lamb $5000.00
"For the child of Gerald Lamb $10,000.00."

Defendants timely excepted to instructions Nos. 1, 13, and 15, as given, stating the grounds upon which such exceptions were based.

Defendants, on May 31, 1945, filed a motion for judgment notwithstanding the verdict, and in the alternative for a new trial, in each case. On June 22, 1945, the court entered an order in the Evans case denying the motion for judgment notwithstanding the verdict and the motion for new trial and, on the same day, entered an order in the Lamb case denying the motion for judgment notwithstanding the verdict and denying the motion for new trial provided plaintiff would consent to a reduction with respect to the item segregated to Gerald Lamb as administrator of the estate of Odetta Lamb ($1,244.80 item) in the sum of four hundred dollars. On the same day, June 22, 1945, the court entered judgment on the verdict in the Evans case in favor of plaintiffs for eight thousand dollars, together with costs and disbursements and, on the same day, entered judgment on the verdict in the Lamb case (plaintiff having agreed to accept a reduction of $400 in the verdict) as follows:

"Damages to the Estate of Odetta Lamb, deceased...... $   844.80
"Damages to Gerald Lamb........................... 5,000.00
"Damages to the child of Gerald Lamb............... 10,000.00"

Defendants have appealed from the judgment entered in each of the above cases.

Upon stipulation of the parties, the court, on July 19, 1945, entered an order as follows:

"IT IS HEREBY ORDERED that the above entitled cases shall be joined on appeal to the supreme court of the state of Washington; that hereafter instruments filed in said cases in connection with such appeal shall be filed in cause No. 21123, and that one cost bond in appeal in the amount of $400.00 for the protection of all of said plaintiffs shall be sufficient for that purpose."

Appellants' contention that the court erred in refusing to grant their motion for new trial is predicated upon four grounds: (1) in admitting plaintiffs' (respondents') exhibits Nos. 7 and 8; (2) in giving certain instructions relative to the Lamb case, particularly instructions Nos. 1 and 13; (3) in giving instruction No. 8, wherein the court instructed the jury that the negligence, if any, of Earl Chase, the driver and owner of the car, could not be imputed to respondents; and (4) in instructing the jury that recovery might be allowed for permanent or continuing disability, injury, pain, and suffering, after having ruled same out of the case.

Respondents' exhibits Nos. 7 and 8 purport to be pictures of the car in which respondents were riding at the time of the accident. These pictures were taken a few days after the accident and after the car had been towed to Spady's Wrecking Yard in Vancouver, and from there to another wrecking yard in Portland. It was at the time of trial, and is here, appellants' contention that the evidence does not show that the automobile was in the same condition at the time exhibits Nos. 7 and 8 were taken as it was immediately after the accident. The court was apparently impressed with appellants' contention at the time the exhibits were originally offered, as it sustained an objection to their introduction. Later in the case, appellants introduced pictures of the car taken immediately after the accident, whereupon the court stated that it thought exhibits Nos. 7 and 8 were then admissible, and they were admitted over appellants' objection.

There can be no doubt but that the car was not in entirely the same condition when exhibits Nos. 7 and 8 were taken as it was immediately after the accident, for exhibits Nos. 7 and 8 show that all the wheels have been removed, and it would be impossible to recognize the car shown in exhibits Nos. 7 and 8 as the same car as that shown in the exhibits introduced by appellants. However, no claim is made for damage to the car, and we are of the opinion no prejudicial error was committed in admitting exhibits Nos. 7 and 8.

We are of the opinion that appellants' principal conten-

tion in the Lamb case is that the court erred in giving instructions Nos. 1, 13, and 15, and that because of the error committed, a new trial must be granted. Appellants state in their brief:

"Appellants submit that if, in the opinion of the trial court, Lamb, individually, had failed to establish a case, then the ruling should have gone only to the extent of refusing to submit his claims to the jury.

"Under what rule of law can the theory of the trial court be correct insofar as it applied to the claim for loss of wages? Lamb testified that as a result of his injuries he was unable to work for three weeks following the accident. This constituted the basis for the claim for loss of wages. What right or interest did the estate have in such a claim?"

█ We are of the opinion that instructions Nos. 1, 13, and 15 are so confusing and misleading, especially when considered in connection with instruction No. 14, that the jury could have had no proper conception of the law which was to govern them in their determination of the damages, if any, to be allowed to Gerald Lamb, as administrator of his wife's estate. In addition, we are of the opinion instructions Nos. 13 and 15 erroneously state the law as applicable to the cause of action of Gerald Lamb, as administrator.

While counsel neither refer to nor cite any statute, we assume that the Lamb case was brought under the provisions of Rem. Rev. Stat., §§ 183 and 183-1 [P.P.C. §§ 3-13, 3-15]. Section 183 provides:

"When the death of a person is caused by the wrongful act, neglect or default of another, his personal representative may maintain an action for damages against the person causing the death . . ."

Section 183-1:

"Every such action shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. If there be no wife or husband or child or children, such action may be maintained for the benefit of the parents, sisters or minor brothers, who may be dependent upon the deceased person for support, and who are resident within the United States at the time of his death. In every such action the jury may give such

damages as, under all circumstances of the case, may to them seem just."

While no objection was made to Gerald Lamb testifying to the personal injuries sustained by him, and no motion was made to dismiss him individually as a party plaintiff, as indicated instruction No. 1 specifically instructed the jury that he was not entitled to recover individually for any personal injuries claimed to have been sustained by him, and that Gerald Lamb, as administrator, was to be considered as the sole plaintiff. Having so instructed the jury, we are unable to see upon what theory or under what rule of law the court then instructed the jury in instruction No. 13 that if they found either party (referring to both the Lamb and Evans cases) was entitled to recover for personal injuries, the jury was to proceed to fix the amount of the damages, and, in so doing, they were to take into consideration the nature and extent of the *injuries to Gerald Lamb* or to Kathleen Evans, the pain and suffering which each endured, and the *permanency or temporary character* of their injuries.

In *Hansen v. Stimson Mill Co.,* 195 Wash. 621, 81 P. (2d) 855, after referring to §§ 183 and 183-1, *supra,* we stated:

"Under these statutes, it has been held that there is but a single right of action, even though there be a number of beneficiaries, and that the personal representative, that is, the executor or administrator, *is the only one by whom the action can be maintained. Broughton v. Oregon-Wash. R. & Nav. Co.,* 137 Wash. 135, 241 Pac. 963; *Dodson v. Continental Can Co.,* 159 Wash. 589, 294 Pac. 265. From those holdings, it necessarily follows that the beneficiaries entitled to share in the judgment are not parties to the action." (Italics ours.)

While we do not think that the claimed cause of action by Gerald Lamb, individually, could be joined in the same action with one by Gerald Lamb as administrator of his wife's estate, for the death of his wife, in this proceeding no motion was made to separately state the causes of action, nor was any demurrer filed to the amended complaint.

Apparently the court on its own motion instructed the jury that Gerald Lamb, individually, could not recover herein.

But regardless of why the court instructed the jury that Gerald Lamb, individually, could not recover herein, we are of the opinion there is no theory upon which the court was justified in instructing the jury that, as to Gerald Lamb, as administrator suing for the death of his wife, they could consider the personal injuries sustained by Gerald Lamb or his loss of wages.

Respondent argues that since Gerald Lamb, individually, did not cross-appeal, appellants have no cause to complain, but we are unable to follow respondent in this contention. If Gerald Lamb, individually, had been permitted to recover, then it might be admitted that appellants would have no cause for complaint, but, when the court informed the jury that Gerald Lamb as administrator was to be considered as the only party plaintiff, certainly appellants were justified in contending that the court erred in instructing the jury that, in arriving at a verdict, they could consider the personal injuries sustained by Gerald Lamb and his loss of wages.

We now come to the Evans case, and we are of the opinion a new trial must be granted in this case also.

The complaint in the Evans case does not allege that the injuries sustained by Kathleen Evans were of a permanent or continuing character. The court, as hereinbefore indicated, sustained an objection to Mrs. Evans' testimony going to the question of the permanency or continuing character of her injuries, and no further attempt was made by respondents to introduce any evidence as to that question. Appellants, relying on the ruling of the court, offered no testimony on the question of whether or not the injuries claimed to have been received by Mrs. Evans were of a permanent or continuing character. That was the condition of the record at the close of the case. Yet, regardless of the fact that there was no competent evidence that the injuries sustained by Mrs. Evans were of a permanent character, the court, in instruction No. 13, told the jury that, if they found that Mr. and Mrs. Evans were entitled to recover,

they could take into account the permanency or temporary character of Mrs. Evans' injuries.

■ While we are of the opinion it constituted prejudicial error for the trial court, after sustaining an objection to Mrs. Evans' testimony relative to the permanency of the injuries claimed to have been sustained by her, to then instruct the jury that they could consider the permanency or temporary character of her injuries, we are also of the opinion that there was no testimony in this case, even by Dr. Hutt, upon which to base any conclusion as to the permanency or temporary character of Mrs. Evans' injuries. In other words, the jury could only speculate as to whether such injuries were permanent or temporary.

We are of the opinion no error was committed by the giving of instruction No. 8. As we read the record, there was ample testimony to justify the conclusion that respondents were riding in the car as guests of the driver and owner of the car. We find no testimony which would have justified the trial court in giving an instruction to the effect that all the parties in the car were engaged in a joint enterprise.

For the reasons herein assigned, we are of the opinion that a new trial must be granted in both the Lamb and Evans cases, and the judgment of the trial court in each case is therefore reversed, and the consolidated case is remanded to the trial court, with instructions to proceed in accordance with this opinion.

STEINERT, ROBINSON, MALLERY, CONNELLY, ABEL, and SCHWELLENBACH, JJ., concur.

SIMPSON, J. (concurring)—I concur in the result obtained by the majority. I cannot agree, however, that exhibits Nos. 7 and 8 should have been admitted in evidence. The majority holds that no prejudicial error was committed in their admission because respondents had not made a claim for damages to the car. There was in this case, and there is in every case of this character, additional reasons for the introduction of pictures of wrecked cars, or the scene of the accident where injury occurred. The purpose,

of course, is to give to the jury a better understanding of what happened. In this case, it was very evident that the purpose of introducing the exhibits Nos. 7 and 8, was to show the jury the force of the collision, the place, or places where the car was hit, and the cause of the injury to the occupants of the car. To my mind it was highly prejudicial to allow the introduction of the pictures. The condition of the car had been materially changed after the accident, and before the pictures were taken, and the unexplained changes that had been made could give, and probably did give, the jury an erroneous impression of the cause of the accident.

MILLARD, C. J. (concurring with SIMPSON, J.)—I concur in the opinion of Judge Simpson. I do not yet agree that opinion in *Gooschin v. Ladd,* 177 Wash. 625, 33 P. (2d) 653, which supports majority opinion in case at bar, is correct; it should be overruled.