[No. 33853. Department Two. October 3, 1957.]

GLADYS NEWMAN, *as Executrix, Respondent,* v. OWL TRANSFER & STORAGE COMPANY, *Appellant.*[1]

[1]Reported in 316 P. (2d) 120.

*Hullin & Ehrlichman,* for appellant.

*Ralph M. Rogers* and *H. Frank Stubbs,* for respondent.

WEAVER, J.—This is an action for wrongful death.

The jury returned a verdict in favor of defendant, a corporation engaged in the transfer business. It appeals from an order granting plaintiff's motion for a new trial.

Since the impression conveyed to the jury by instruction No. 12-A, combined with the court's refusal to give one of plaintiff's proposed instructions, is the sole reason given by the trial court in its order granting a new trial, we set forth only those facts necessary to consider the question presented.

St. Helens avenue, a main arterial street in the city of Tacoma, extends approximately north and south. It is fifty-two feet wide; the outside traffic lanes are sixteen feet wide; the inside lanes are ten feet. South Second street intersects St. Helens avenue. The Temple Theatre is located on the northeast corner of the intersection and extends some distance to the north. The stage door is approximately one hundred seventy-one feet north of the north line of the intersection.

Two trucks owned by defendant were involved in the accident: the first, a Dodge solo truck, twenty-one feet long, described as a "single piece, conventional piece of equipment"; the second, a tractor and trailer. The tractor

was nineteen feet two inches long; the trailer twenty-six feet seven inches long.

About 9:45 p.m. on the night of the accident, defendant's trucks arrived at the stage door of the theatre. The Dodge solo truck (twenty-one feet in length) was backed up to the curb. Loading of the solo truck was completed about 11:00 p. m. It circled the block while the tractor and trailer (twenty-six feet seven inches in length) backed up to the curb at a right angle, so that the front of the trailer faced west and the back faced east. The tractor was "jackknifed" to the north in the inside traffic lane. Its left wheels were either on, or within four or five inches of, the painted centerline of St. Helens avenue.

After circling the block, the solo truck came north on St. Helens avenue and parked parallel to the curb, five to eight feet south of the trailer. The driver testified, "There were parked cars there and I parked, double parked."

From the photographs in evidence, it appears that the solo truck (eight feet wide) parked on the inside half of the outside northbound lane of traffic, which is sixteen feet wide.

Even though a small portion of the back end of both the Dodge solo truck and the trailer, while loading, extended over the sidewalk, it is apparent they both blocked the two northbound traffic lanes on St. Helens avenue at the stage entrance.

About 1:10 a. m. on the day of the accident, Paul Newman was driving north on St. Helens avenue in the inside traffic lane. His car collided with the rear of defendant's tractor. He did not survive the accident.

In instruction No. 10, the court quoted that portion of RCW 46.48.260 pertinent to the facts of this case, which states that

" . . . every vehicle stopped or parked upon a roadway where there is an adjacent curb shall be so stopped or parked with the right hand wheels of such vehicle parallel to and within twelve inches of the right hand curb."

Instruction No. 12 quoted the same language as a part of the traffic code of the city of Tacoma.

The trial court's reason for granting a new trial springs from instruction No. 12-A, which reads as follows:

"You are further instructed that parking is defined as follows in the ordinances of the City of Tacoma:

" 'Park'—The standing of a vehicle, whether occupied or not, otherwise than *temporarily* for the purpose of and while actually engaged in loading or unloading.'

"You are therefore instructed that the van and tractor are excluded from the provisions of the parking ordinances of the City of Tacoma and the parking laws of the State of Washington." (Italics ours.)

It is not disputed that the Dodge solo truck was violating both the state law and the traffic code of the city. It was standing more than twelve inches from the curb; it was not standing "temporarily for the purpose of and while actually engaged in loading or unloading." Plaintiff's requested instruction, which reads as follows:

"You are instructed that under the undisputed evidence in this case, the defendant violated the statutes of the State of Washington in relation to obstruction of a highway or road, and in relation to parking, and that therefore defendant is guilty of negligence as a matter of law.

"If you further find that such negligence was the sole, proximate cause of the death of Paul Newman, then your verdict will be for the plaintiff,"

should have been given, provided, of course, that it be made clear that it applied only to the Dodge solo truck.

Throughout the record, the word "van" is used to identify both tractor and trailer and the Dodge solo truck. The last paragraph of instruction No. 12-A (quoted *supra*) states that the "van and tractor *are* excluded" from the provisions of the parking ordinance and the state statute. As we have just pointed out, this exclusion, as applied to the Dodge solo truck, is erroneous. The trial court concluded that

" . . . Instruction No. 12-A as given could have confused the jury as to whether the instruction applied to the van and tractor [trailer and tractor] or the Dodge solo van [truck] or *both*." (Italics ours.)

■ With this we agree, for there is no way of knowing whether the jury applied the instruction to one or both of

defendant's vehicles. See *Heggen v. Seattle*, 47 Wn. (2d) 576, 585, 288 P. (2d) 830 (1955).

We do not agree, however, that the last paragraph of instruction No. 12-A is a correct statement of the law under the facts of this case, even if it is applied only to the tractor and trailer. By excluding them from the provisions of the statute and ordinance, as a matter of law, the trial court entirely disregarded the word "temporarily" and the phrase "for the purpose of and while actually engaged in loading or unloading." The use of the word "temporarily" in the ordinance indicates a question of fact, unless it can be said, as a matter of law, that "the standing of a vehicle" is so momentary there is no evidence to submit to the jury the question of whether the vehicle was parked. See *Neeley v. Bock*, 184 Wash. 135, 50 P. (2d) 524 (1935), and cases cited.

If (a) the tractor and trailer were not parked "temporarily," or if (b) they were not actually engaged in loading or unloading, or if (c) neither condition existed, then the ordinance is violated. In the instant case, there is evidence that the tractor and trailer blocked both lanes of northbound traffic for at least two hours.

Whether the tractor and trailer were parked or were not parked in violation of the ordinance must be determined from all the circumstances. "Parking" means something more than a mere temporary and reasonable stop for a necessary purpose. The reasonableness of a temporary stop, including the length of such a stop, depends upon the circumstances. In the instant case, it should not have been held, as a matter of law, that the ordinance had not been violated by the tractor and trailer. The circumstances of this case, under the ordinance, present questions of fact for the determination of the jury.

By reason of Rule on Appeal 16, 34A Wn. (2d) 23, as amended, effective January 3, 1955, the respondent argues that it was error for the trial court to give instruction No. 19 and 19-A to the jury, and that it erred when it refused to give respondent's requested instructions of wanton misconduct.

■ Instruction No. 19 instructed the jury that a person is charged with the duty of seeing those objects which he would have seen had he been exercising reasonable care. The lights or lack of lights and reflectors on both trucks, and the condition of the street lighting at the time of the accident, raise a sufficient question of fact to justify the instruction.

Instruction No. 19-A stated that every automobile must be equipped with headlights which are sufficient on low beam to reveal a person or vehicle at a distance of at least one hundred feet. We have no quarrel with the instruction, since it is based on RCW 46.40.140; however, under the present state of the record, we fail to find substantial testimony to justify the instruction.

An examination of the record discloses that the essential prerequisites of wanton misconduct, as defined in *Adkisson v. Seattle*, 42 Wn. (2d) 676, 258 P. (2d) 461 (1953), are absent. It was not error for the trial court to refuse to give respondent's requested instructions dealing with this theory.

The order granting a new trial is affirmed.

HILL, C. J., DONWORTH, and FOSTER, JJ., concur.

---

November 25, 1957. Petition for rehearing denied.