[No. 36133. Department Two. June 27, 1963.]

ELDON FRASCH et al., *Appellants*, v. JOHN LEEDOM et al.,
*Respondents*, MORRIS BUSH et al., *Additional
Defendants.**

* Reported in 383 P. (2d) 307.

██ 

*Lawrence M. Ross* (of *Sawyer, Griffin & Boyle*), *for* appellants.

*Gordon, Goodwin, Sager & Thomas*, for respondents.

HAMILTON, J.—Plaintiffs (appellants) appeal from an order granting defendants' (respondents') motion for judgment notwithstanding the verdict.

On September 18, 1959, at about 11:30 p. m., plaintiff Laura K. Frasch (hereafter referred to as if she were the sole plaintiff) and her teenage son were returning from a high school dance attended by her son. Plaintiff was traveling north on Pacific Avenue (also known as the Mountain Highway) in Pierce County, Washington. Pacific Avenue, in the vicinity in question, is a straight, fairly level, 60-mile an hour, four-lane highway, the north and southbound lanes being separated by double yellow lines. It had been raining and misting, the pavement was wet, the night was dark, and visibility was correspondingly affected. Several automobiles, returning from the school dance, were traveling north, some with their windshield wipers on, at speeds varying from 35 to 50 miles an hour. Approaching an unlighted intersection, at which she wished to turn west, plaintiff, traveling in the outside or easterly lane of travel, slowed down and prematurely turned sharply across the passing or inside northbound lane. A collision occurred between her vehicle and a northbound vehicle (hereafter referred to as the Salsberry vehicle) approaching in the passing lane. As a result of the collision, the Salsberry vehicle was disabled and came to rest headed north in the northbound passing lane. Its head and taillights remained on. Plaintiff's vehicle, still operable, came to rest headed south in the southbound lanes. Some words

concerning fault were exchanged between the occupants of the respective vehicles, and from its position in the southbound lanes plaintiff drove her vehicle to the westerly shoulder of Pacific Avenue and parked it. Plaintiff and her son then returned on foot to the Salsberry vehicle, purportedly to render assistance, survey the damage, and exchange identification.

In the meantime, two automobiles, traveling behind plaintiff's vehicle in the outside northbound lane, stopped and parked off the highway north of the scene. The two occupants of the Salsberry vehicle alighted and the owner, thinking plaintiff had left the scene, requested the occupants of the first following vehicle to remain as witnesses. The occupants of the second vehicle walked to the front of the Salsberry vehicle, where plaintiff, her son, and the two occupants of the Salsberry vehicle were beginning to assemble, inquired of the Salsberry occupants about flashlights or flares, following which one left to notify the state patrol. The Salsberry occupants noticing headlights approaching from the south in both the outside and passing lanes, commented upon the potential danger thereof and commenced running toward the south in an effort to warn the approaching vehicles by waving and shouting. The plaintiff, at this time, was either just arriving or standing in mid-front of the Salsberry vehicle observing the damage to the vehicle. She disclaims, under the stress of the moment, knowledge of impending danger, knowledge of who or how many persons were present, hearing the conversations about flashlights, flares or approaching vehicles, and hearing or seeing, until the last moment, any approaching vehicle.

Defendants' automobile was the vehicle approaching in the passing lane. It was operated by 16-year-old Jeanette Leedom, who was returning from the school dance with several girl friends as passengers. It struck the rear of the Salsberry automobile causing it to run over and injure plaintiff.

An interval, variously estimated between a few seconds and 3 minutes, elapsed between collisions.

Defendants' vehicle, according to defendants' evidence, had, for some distance preceding the collision, been traveling at a speed of 40 to 50 miles an hour in the outside lane behind another vehicle driven by one Gary Justice. Approximately 1½ to 2½ blocks (600 to 900 feet) from the point of impact, the Justice vehicle slowed down, the driver having observed the confusion ahead. Defendant driver then turned into the inside lane and commenced passing the Justice vehicle. Thereafter, defendant driver noticed for the first time the taillights of the Salsberry vehicle. On both direct and cross-examination defendant driver explained her reaction substantially as follows:

"A. Well, when I first saw it I thought it was any ordinary car and as I got closer it looked like it was going slow, and then that's when I let my foot up off the accelerator. Then when I got closer I knew it wasn't going, that it had stopped, and naturally I proceeded to apply my brakes."

A passenger in a vehicle traveling a few car lengths behind defendants' automobile estimated defendants' brake lights came on a distance of 150 feet before impact. The occupants of the Salsberry vehicle, who in their attempts to warn approaching traffic had reached a point 20 to 30 feet behind the disabled vehicle, estimated defendants' vehicle started skidding 40 to 60 feet south of them. A state patrol officer measured 48 feet of skid marks from the point of impact.

Three following vehicles experienced difficulty in avoiding further collisions.

Plaintiff, alleging negligence, instituted action against defendants. Defendants, joining issue, affirmatively alleged contributory negligence and volenti non fit injuria, counterclaimed for injury and property damage, and by cross-claim joined as additional party defendants the driver and owner of the Salsberry vehicle.

At the conclusion of the evidence, the trial court held defendant driver guilty of negligence as a matter of law, dismissed defendants' counterclaim and cross-claim, and submitted to the jury the issues of plaintiff's contributory

negligence and the first phase of the doctrine of last clear chance.

The jury returned a verdict for plaintiff. The trial court granted defendants' motion for judgment notwithstanding the verdict upon the grounds that plaintiff was guilty of contributory negligence as a matter of law and that the doctrine of last clear chance was inapplicable. The trial court alternatively granted a new trial.

Plaintiff assigns error to the trial court's action and, in the event of a new trial, to certain instructions given and refused.

Defendants, pursuant to Rule on Appeal 16,[1] RCW Vol. 0, assign error to the trial court's rulings related to defendants' negligence, the applicability of the doctrine of volenti non fit injuria, and to certain instructions given and refused.

Our review of the record convinces us the trial court erred in granting judgment notwithstanding the verdict, and correctly granted a new trial. We so conclude because we are satisfied the trial court erred in (a) ruling defendants guilty of negligence as a matter of law, (b) ruling plaintiff guilty of contributory negligence as a matter of law, and (c) submitting to the jury the doctrine of last clear chance.

In discussing the reasons for our conclusions, in the order above listed, we do so in the light of the oft-cited rule that a challenge to the sufficiency of the evidence, a motion for dismissal or for directed verdict, or a motion for judgment notwithstanding the verdict admits the truth of the opponent's evidence, together with all reasonable inferences arising therefrom, and requires a most favorable interpretation thereof. No element of discretion is involved, and such motions can be granted only when the court can say, as a matter of law, there is no substantial evidence to support the opponent's claim. *Williams v. Hofer*, 30 Wn.

[1] ". . . Without the necessity of taking a cross-appeal, the respondent may present and urge in the supreme court any claimed errors by the trial court in instructions given or refused and other rulings which, if repeated upon a new trial, would constitute error prejudicial to the respondent." Rule on Appeal 16, RCW Vol. 0.

(2d) 253, 191 P. (2d) 306; *Lambert v. Smith*, 54 Wn. (2d) 348, 340 P. (2d) 774; *Miller v. Payless Drug Stores of Washington*, 61 Wn. (2d) 651, 379 P. (2d) 932.

The trial court's determination that defendant driver was guilty of negligence as a matter of law of necessity must rest upon a premise of the driver's failure to timely observe and realize that the Salsberry vehicle was stationary.

■ Defendant driver testified she first observed the Salsberry taillights from a distance of about one block (300 to 400 feet) after moving, from behind another vehicle, into the passing lane at a speed of from 40 to 50 miles an hour. Thereafter her sequential impressions were that the disabled vehicle was moving normally, traveling slowly, standing still. When the latter realization took place, the evidence indicates, she applied her brakes, at a point between 48 to 150 feet from the disabled vehicle, attempted evasive action, and skidded upon the wet pavement into collision.

With but slight factual and distance variations, we deem our observations in *Davis v. Browne*, 20 Wn. (2d) 219, 226, 147 P. (2d) 263, most apt:

"The mere fact that Davis did not realize that the Browne car was stationary upon the highway until he himself was within approximately one hundred feet of it cannot be said to constitute negligence on his part regardless of all other circumstances. It was, of course, his duty to exercise reasonable care, under the existing circumstances, to observe the presence of the automobile ahead of him and avoid coming in contact with it. . . .

"As suggested by the trial court in its memorandum decision, any experienced driver of an automobile knows how difficult it sometimes is during the hours of night to determine whether a car ahead of him showing red taillights is actually moving, or at what speed it is moving, or whether it is stopping, or has in fact stopped. It would be most natural for one to assume that a car ahead of him, particularly if it were occupying the middle of the road, was proceeding forward rather than standing still in violation of positive law.

"In this instance, Davis was traveling along a course and at a rate of speed in conformity to law. Seeing the car ahead and thinking that it was in motion, he veered slightly

to his left when two hundred fifty feet away, with the evident intention of overtaking and passing that car. Had the car ahead been moving, Davis most probably would have succeeded in passing it in safety. It was not until he was within approximately one hundred feet of the Browne car, that either he or his companions realized that it was standing still. We are unable to say that the trial court was in error in refusing to hold that, under the existing circumstances, Davis was guilty of negligence in not sooner discovering that the Browne car was stationary."

Viewing defendants' evidence in the favorable light required, we conclude that the trial court erred in determining defendant driver guilty of negligence as a matter of law.

The trial court, in ruling upon defendants' motion for judgment notwithstanding the verdict, determined plaintiff to be guilty of contributory negligence as a matter of law. The trial court, in so holding, stated in its order:

". . . The Court erred in submitting to the jury the issue of the plaintiff's negligence. She entered upon the highway as a pedestrian, while under no duty so to do, and stood immediately in front of the disabled Salsberry vehicle, and remained in said position for an appreciable length of time. She made no observation whatever, either while proceeding upon the highway or standing there with respect to oncoming traffic. Her negligence continued to the moment of her injury and at no time was she in a position where she could not have avoided such injury by merely stepping to one side or the other."

In essence, plaintiff testified she returned, as a participant in the accident, to the Salsberry vehicle to observe the damage, to render any assistance necessary, and to exchange identifications. This she contends was in compliance with her duty under RCW 46.52.020(3).[2] Under such

---

[2] "(3) The operator of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and vehicle license number and shall exhibit his vehicle operator's license to any person struck or injured or the operator or any occupant of, or any person attending, any such vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such

circumstances, her duty of care was not that of the ordinary pedestrian. In *See v. Willett*, 58 Wn. (2d) 39, 44, 360 P. (2d) 592, after reviewing our previous decisions dealing with persons standing or moving about vehicles on or near a highway, we stated the duty of care, incumbent upon persons in plaintiff's situation, to be as follows:

". . . A person who stands upon the highway must exercise reasonable care for his own safety; and whether the person has complied with this requirement must depend upon all of the circumstances of the case."

■ The circumstances presented by the evidence in the instant case reveal uncertainty as to the time plaintiff was actually in front of the Salsberry vehicle (the estimates varying from a few seconds to 2 or 3 minutes), the number of people there at varying times, whether plaintiff could or did overhear conversations relating to potential danger, and whether, after plaintiff observed or in the exercise of care should have observed, the approaching headlights of defendants' vehicle, she could have avoided injury.

Viewing the evidence in the favorable light required, we conclude, as in the *See* case, the issue of whether plaintiff exercised reasonable care for her own safety, under all the circumstances, became a question for the jury. The trial court erred in ruling otherwise.

Plaintiff contends the trial court erred in ruling that the doctrine of last clear chance did not apply.

In *Leftridge v. Seattle*, 130 Wash. 541, 545, 228 Pac. 302, we summarized the doctrine of last clear chance as applied in this state as follows:

"Thus we have two different situations to which the last clear chance rule applies. In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's

person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person or on his behalf. Under no circumstances shall the rendering of assistance or other compliance with the provisions of this subsection be evidence of the liability of any operator for such accident;" RCW 46.52.020(3).

negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it."

■ In the instant case, the underlying basis of negligence on the part of both plaintiff and the defendant driver, in so far as the applicability of last clear chance be concerned, is inattention or failure to maintain a proper lookout for their own safety and the safety of others.

Under the circumstances prevailing, we deem our recent reference in *Thompson v. Titus Motor Co.*, 60 Wn. (2d) 372, 375, 374 P. (2d) 177, most fitting:

"It is pointed out in one of the late texts: If an inattentive defendant negligently fails to see an inattentive (but not helpless) plaintiff, the case falls into the category where both plaintiff and defendant are negligently unaware of an impending peril; the plaintiff could have saved himself as long as defendant could have saved him. Under such circumstances, most American courts and the American Law Institute rule[1] out last clear chance. 2 Harper and James, Law of Torts § 22.13, p. 1252.
"[1] 2 Restatement of Torts, § 480."

The trial court erred in submitting the first phase of the doctrine to the jury, and correctly concluded on the post trial motions that neither phase of the doctrine applied.

A new trial being necessary, we now turn to assignments of error directed by the respective parties to the trial court giving and refusing to give certain instructions. In this respect, it is to be noted that defendants have not assigned error to the dismissal of their counter and cross-claims. The new trial, therefore, is limited to the issues of negligence and contributory negligence revolving about plaintiff's claim.

Plaintiff assigns error to the giving of instructions Nos. 15, 17, 21, 22, 23, and 25, and the failure to give one proposed instruction.

Instructions Nos. 15 and 17 deal with plaintiff's duties as a pedestrian. We deem these instructions inappropriate for the reasons stated in *See v. Willett, supra*.

Plaintiff's assignments of error directed to instructions Nos. 21, 22, 23, 25, and the failure to give a proposed instruc-

tion, as argued by plaintiff, revolve about the doctrine of last clear chance and plaintiff's negligence in connection with the first collision. Absent applicability of the doctrine of last clear chance, the instructions would not appear apropos.

Defendants' assignments of error dealing with instructions revolve about the trial court's refusal to submit the defense of volenti non fit injuria.

■ The trial court correctly refused such instructions. Defendants, upon the basis of the evidence presented, failed to carry their burden of demonstrating a superior knowledge and appreciation, on the part of plaintiff, of the danger or risk involved in joining other persons at the Salsberry vehicle, or of a wilful consent to the peril of another driver's inability to avoid a second collision. Viewing the evidence in a light most favorable to defendants' contention, plaintiff's conduct would, at best, constitute only contributory negligence involving an unreasonable exposure to danger.

The trial court's order granting judgment notwithstanding the verdict is reversed, and the cause remanded for new trial. Costs will abide the results of retrial.

Oтт, C. J., Donworth, Finley, and Hunter, JJ., concur.

August 29, 1963. Petition for rehearing denied.