REGINALD HAYNES, *Appellant*, v. WILLIAM MOORE, ET AL, *Respondents*.

*Duane Lansverk* (of *Landerholm, Memovich, Lansverk, Whitesides, Marsh, Morse & Wilkinson*), for appellant.

*Hugh J. Potter* and *James Horton* (of *Blair, Schaefer, Hutchison, Wynne, Potter & Horton*) and *R. DeWitt Jones*, for respondents.

PEARSON, J.—This action, brought by plaintiff, Reginald Haynes, is to recover for injuries he suffered when he was involved in a 3-car collision with the defendants,. William Moore and Donald Pitsch. The accident occurred on the Columbia River bridge approximately 25 feet south of the Washington-Oregon border.

The case was tried to a jury, pursuant to the Oregon comparative negligence statute.[1] Plaintiff was found 50 percent negligent, Moore 40 percent negligent, and Pitsch 10 percent negligent. Under the Oregon law, a plaintiff may not recover damages if he is found more negligent than the defendants. Thus, because of the jury's apportionment of negligence, the plaintiff here was unable to recover and his case was dismissed. Haynes moved for a new trial or a judgment n.o.v., alleging the trial court erred by failing to give Haynes' proposed emergency instruction, and because the evidence was insufficient to support the court's instruction involving Haynes' statutory duty with respect to the headlight equipment on his car. Plaintiff appeals from the denial of these motions. For the reasons stated below, we find plaintiff's contentions have merit and reverse.

The emergency doctrine applies after a person is placed in a position of peril and must choose between courses of action to avoid the peril. The effect of the doctrine is to excuse "an unfortunate human choice of action that would be subject to criticism as negligent were it not that the party was suddenly faced with a situation which gave him no time to reflect upon which choice was the best." *Zook v. Baier*, 9 Wn. App. 708, 714, 514 P.2d 923 (1973). The doctrine is inapplicable if the emergency is brought about by the negligence, in whole or in part, of the person seeking its benefit.

With these general principles in mind, we turn to the evidence presented at trial. The accident occurred while plaintiff was proceeding southbound in the far right

---

[1]The parties assumed at trial and on appeal that Washington law governs the standard of conduct of the drivers on the Washington side of the border.

lane of the Columbia River bridge on November 28, 1972, a little after 6 a.m. on a dark, rainy morning. Earlier defendant Moore's vehicle had stalled in the plaintiff's lane of travel, and even though he had pulled it as far to the right as possible, it blocked the flow of traffic. Plaintiff testified no taillights were visible on the back of Moore's car. Because of the poor visibility, he did not observe the stalled car until he was about 50 feet behind it. When he did see the vehicle, he applied his brakes rather than swerve to the left, wanting to avoid involving a third car in an accident by trying to drive around the Moore vehicle without time to see whether the left lane was free of traffic. Plaintiff was unable to stop his car in time to avoid colliding with Moore's car, and defendant Pitsch, who was following the plaintiff, collided with the back of the plaintiff's car. Testimony of the defendants' witnesses sharply contradicted that of Haynes. There was evidence Moore's taillights were illuminated and that several other vehicles managed to avoid a collision by swerving around his car. While the evidence in favor of the plaintiff may not have been as convincing as that of the defendants, it was substantial and was therefore sufficient to entitle the plaintiff to an instruction on the emergency doctrine. *Bell v. Wheeler*, 14 Wn. App. 4, 538 P.2d 857 (1975).

Defendants advance three arguments in favor of the trial court's refusal to instruct on sudden emergency. They first argue that their defense at trial was not based on Haynes' negligence *after* he observed Moore's car, but was based on his negligence *prior* to confronting the emergency by failing to keep a proper lookout. We find, however, that while the defendants may not have specifically contended plaintiff was negligent after discovering the disabled vehicle, this was their contention in fact and is clearly implied by the evidence produced in their favor. This contention permeated the case. The emphasis put on the drivers who saw Moore's stalled car and avoided collision by swerving makes it clear the defendants were trying to persuade the jury of the plaintiff's negligence in failing to do what the other

drivers did, namely, observe sooner and swerve. Viewing the evidence in this manner the jury could infer the plaintiff was negligent up to the point of collision.

The defendants next contend the emergency doctrine is inapplicable because the emergency was caused in part by the plaintiff's negligence in failing to keep a proper lookout. In *Bell v. Wheeler, supra,* we were faced with an analogous argument. In that case the plaintiff collided with a bus on the bus' side of the road. The only testimony that the bus was in the plaintiff's lane of travel when the plaintiff first observed it rounding a curve was from the plaintiff. We held there the jury had a right to believe the plaintiff even in the face of contrary testimony, and that his testimony alone supported an instruction on the emergency doctrine. The same applies here. The jury had a right to believe plaintiff's testimony that no taillights were visible on the Moore vehicle and that because of the inclement weather the vehicle blended into the background. The jury also had a right to infer from this testimony that the plaintiff was not negligent up to the point he saw the stalled car and decided to apply his brakes, rather than to swerve to the inside lane.

Defendants' third argument is that the emergency doctrine is inappropriate since the plaintiff's own testimony indicates he made no choice between courses of action once he was confronted with the peril. This contention is contrary to Haynes' testimony that he chose to apply his brakes and attempt to stop rather than swerve and risk incurring an accident with a car in the left lane.

Since there was substantial evidence presented on all elements of the emergency doctrine, albeit some vigorously contested, the question of whether an emergency existed and whether the plaintiff's own negligence contributed to the emergency was for the jury, and plaintiff was entitled to a proper instruction.

Plaintiff's second assignment of error involves the propriety of instruction No. 20, regarding the Oregon statutory requirements with respect to headlight equipment,

position, and intensity.[2] Plaintiff's objection to the instruction is twofold, but only one of the objections was presented to the trial court. Normally, we would not consider an objection to a jury instruction which was not presented to the trial court. *Cunningham v. Tieton*, 60 Wn.2d 434, 374 P.2d 375 (1962). However, since we have determined a new trial should be granted, and to avoid any misunderstanding concerning the propriety of this instruction, we think both of plaintiff's objections are well taken and the instruction should not be given.

In the first place, the light intensity requirements in the statute specifically relate to "straight, level unlighted highway under normal atmospheric conditions." Ore. Rev. Stat. 483.402. Without that qualification, the jury could well find that plaintiff's vehicle failed to conform to the statute because he failed to see the vehicle 50 feet away, even though atmospheric conditions were extremely adverse.

▪ But more importantly, there was no evidence the headlamps on plaintiff's vehicle failed to conform to the statutory requirements. It is axiomatic that prejudicial error occurs where the jury is instructed on an issue that lacks substantial evidence to support it. *See Bartlett v. Hantover*, 84 Wn.2d 426, 526 P.2d 1217 (1974). Plaintiff's failure to see the stalled vehicle does not establish that the lighting equipment on his vehicle was defective. We do not think instruction No. 20 should be given on retrial. *See Newman*

---

[2]Instruction No. 20, based on Ore. Rev. Stat. 483.424, states:

"You are instructed that the laws of the State of Oregon provide 'the headlamps . . . on motor vehicles other than motorcycles, shall be so arranged on any motor vehicle that the driver may select at will, or so that the selection can automatically be made, between distributions of light projected to different elevations, subject to the following requirements and limitations:

" '(1) There shall be an uppermost distribution of light or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of at least 350 feet ahead of such vehicle for all conditions of loading.

" '(2) There shall be a lowermost distribution of light or composite beam, so aimed and of such intensity as to reveal a person or vehicle on a street or highway at a distance of at least 100 feet ahead of the vehicle.' "

*v. Owl Transfer & Storage Co.*, 51 Wn.2d 67, 316 P.2d 120 (1957).

Plaintiff also contends the trial court erred in refusing to instruct the jury to the effect that while driving at night, one has the right to assume the road ahead is safe for travel in the absence of a red or other light to warn him of the contrary. We have no quarrel with this statement, but assuming the trial court erred in refusing this instruction, the plaintiff was not prejudiced. A review of the instructions given shows plaintiff's arguments to the jury were not restricted by the omission of this instruction. *Balandzich v. Demeroto*, 10 Wn. App. 718, 519 P.2d 994 (1974); *Chapman v. Claxton*, 6 Wn. App. 852, 497 P.2d 192 (1972). Specifically, we note instructions Nos. 12, 15, and 21[3] gave the plaintiff wide latitude to argue he was not negligent in assuming the road ahead was free of peril caused by the negligence of others.

Because our resolution of these issues requires a reversal and new trial, it is unnecessary to determine whether, as plaintiff contends, the jury improperly prorated the parties' negligence. We note, however, it is only

---

[3]Instruction No. 12 states:

"Every person using a public street or highway has the right to assume that other persons thereon will use ordinary care and will obey the rules of the road, and he was a right to proceed on such assumption until he knows, or in the exercise of ordinary care should know, to the contrary."

Instruction No. 15 states:

"One whose vehicle is stopped on the traveled portion of a highway is charged with the duty to use such care as an ordinarily careful person would have used under the circumstances existing at the time and place of this accident to warn others of the presence of his vehicle."

Instruction No. 21 states:

"A statute provides that whenever a vehicle is parked or stopped upon a roadway, whether attended or unattended, at any time one-half hour after sunset to one-half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, person or vehicles are not clearly discernible on the highway at a distance of 500 feet, it shall be equipped with one or more lamps which shall exhibit a red light visible from a distance of 500 feet to the rear of such vehicle."

when no evidence exists to support a jury's verdict that an appellate court will interfere. *State v. O'Connell*, 83 Wn.2d 797, 523 P.2d 872 (1974). We can see no reason why the introduction of the doctrine of comparative negligence should have any effect on this principle.

Reversed and remanded for a new trial.

PETRIE, C.J., and REED, J., concur.