[No. 45461. En Banc. June 14, 1979.]

DOROTHY STEWART, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

RALPH OVERTON, ET AL, *Respondents,* v. DOROTHY STEWART, ET AL, *Appellants.*

*James M. Beecher* and *Richard W. Olsen* (of *Hackett, Beecher, Hart, Branom & Vavrichek*), for appellants.

*Slade Gorton, Attorney General,* and *Roger A. Gerdes, Assistant,* for respondent State.

*Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson, P.S.,* by *Edward S. Winskill,* for respondents Overton.

BRACHTENBACH, J.—What began as a December holiday weekend for Floyd and Dorothy Stewart, husband and wife, ended in the death of Floyd Stewart and severe injuries to Dorothy Stewart including the loss of her right leg in a multi–car accident. The Stewarts left their Oregon home to visit relatives in northwest Washington. They traveled north on Interstate Highway No. 5 reaching the vicinity of Everett, Washington, after dark and in a snowstorm.

A short distance north of Everett, I–5 crosses the Snohomish River over a 1,600–foot–long bridge. Shortly after the Stewart auto, with Mrs. Stewart driving and her husband as a passenger, entered the bridge, it hit a slick spot, spun out of control, hit the left guardrail, and ended up blocking the left lane and part of the middle lane of the 3–lane northbound freeway bridge. Prior to the accident Mrs. Stewart had slowed to 25 to 30 miles per hour because of compacted snow on the roadway and reduced visibility.

The bridge was dark since freeway lighting terminated as the freeway straightens from a wide curve and descends to the bridge structure. There is no sign indicating that a motorist is entering upon a bridge structure. There is no overhead structure to indicate a bridge. There is a low guardrail. The northbound bridge is separated by approxi-

mately 9 feet from the southbound lanes. The 9–foot division between the north– and southbound lanes is an open space approximately 70 feet above the Snohomish River.

After coming to a rest, Mrs. Stewart and her husband exited their auto. Mr. Stewart obtained the car jack to straighten the front bumper. He sent Mrs. Stewart south with the flashlight to direct traffic.

Mrs. Stewart successfully guided five or six cars to the outside lane and around their vehicle. She, dressed in dark clothing, suddenly saw headlights in all three oncoming lanes. She turned and ran back toward her car.

One of the approaching autos, driven by Ms. Overton, went out of control and struck the Stewart car. Before Ms. Overton or her passenger could get out, that car was struck by the Graafstra car. The combined wreckage was then struck by the Larsen vehicle.

Mr. Stewart was never seen again until his body was discovered in the Snohomish River some months later. Mrs. Stewart was found near or against the left guardrail with severe leg injuries resulting ultimately in the amputation of her right leg.

While there is some dispute and uncertainty as to the exact sequence of events and locations of persons and vehicles, the foregoing summary is a fair capsule of the events leading to a 6–week trial with 5 parties and 10 lawyers.

To determine the result of that trial, it is necessary to outline the litigation. First, Overton (the second car), sued (1) Mrs. Stewart (the first car), individually and as personal representative of her husband's estate, (2) the State of Washington, (3) Graafstra, the third involved car, and (4) Larsens as the owners and driver of the fourth car. Subsequently and in a separate suit, Mrs. Stewart, individually and on behalf of her husband's estate, sued (1) the State of Washington, (2) Overton, (3) Graafstra, and (4) Larsen.

The two cases were consolidated for trial. Near the end of the trial Graafstra and Larsen settled with Mrs. Stewart.

By special verdict form the jury found:

1. Overton (second car) was not negligent and assessed damages against Stewart for $1,500;

2. The State of Washington was not negligent;

3. The plaintiff Dorothy Stewart was negligent;

4. The negligence of Dorothy Stewart was the cause of damage to Overton;

5. Dorothy Stewart was negligent. and such negligence was a proximate cause of injury or damage to Dorothy Stewart;

6. Floyd Stewart was negligent and such negligence was a proximate cause of injury or damage to Floyd Stewart, but not to Overton;

7. That, using 100 percent as the total combined negligence of all parties which contributed to the injury or damage to Dorothy Stewart, the percentage of negligence attributable to Dorothy Stewart was 100 percent;

8. Using the same formula as in seven, the negligence attributable to Floyd Stewart was 100 percent.

Judgment was entered upon the verdict resulting in a $1,500 recovery by Overton (second car) against Stewart (first car) and no recovery by Stewart (first car) against the State of Washington or Overton. Stewart appealed. We reverse.

I

The first issue is whether the court erred in giving these instructions:

A statute provides: "Pedestrian" means any person afoot.

Instruction No. 27.

Any pedestrian standing or walking upon a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

Instruction No. 28.

You are instructed that a favored driver is allotted a reasonable reaction time in which to take evasive action

after it becomes apparent to him in the exercise of ordinary care that a disfavored driver or a pedestrian will not yield the right of way.

Instruction No. 58.

██ Instruction No. 27 is the statutory definition of pedestrian, RCW 46.04.400. Giving it was proper as there was substantial conflicting evidence as to whether Mrs. Stewart was in the travel portion of the roadway when struck. Each party is entitled to have his or her theory of the case presented to the jury when substantial evidence supports it. *Langan v. Valicopters, Inc.,* 88 Wn.2d 855, 866, 567 P.2d 218 (1977).

The court's definition in instruction No. 28 of the duty of a pedestrian is different from that set by statute, RCW 46.61.240(1), which reads:

Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

It is to be noted that the statutory duty to yield applies to one crossing a roadway. Does that duty also apply to one attending to a stalled vehicle or attempting to warn traffic around such vehicle?

There is conflict and confusion in our cases. We start with *Gooschin v. Ladd,* 177 Wash. 625, 33 P.2d 653 (1934), which held that a motorist standing on a highway next to a stalled car was not a pedestrian. Thereafter, the traffic code was amended to define pedestrian as "Any person afoot." Laws of 1937, ch. 189, § 1(11), p. 840. Relying upon that amendment, *Bergstrom v. Ove,* 39 Wn.2d 78, 86, 234 P.2d 548 (1951), held that a motorist on the highway next to his stalled car was in fact a pedestrian.

However, *See v. Willett,* 58 Wn.2d 39, 44, 360 P.2d 592 (1961), reached a contrary result. After reviewing the cases, we concluded:

A person who stands upon the highway must exercise reasonable care for his own safety; and whether the person has complied with this requirement must depend upon all of the circumstances of the case.

The *See* rule was followed in *Frasch v. Leedom,* 62 Wn.2d 410, 417, 383 P.2d 307 (1963); *Bradley v. Maurer,* 17 Wn. App. 24, 31, 560 P.2d 719 (1977); and *Dailey v. Lange,* 20 Wn. App. 12, 14, 578 P.2d 1322 (1978).

■■ Following the rule of these later cases, it was error to instruct solely on the language of the statute. The rule is that one attending a stalled vehicle must exercise reasonable care for his or her own safety. Since this error went to the duty of Stewart to Overton, it necessitates a reversal of the Overton judgment.

There was no error in instruction No. 58 quoted above because of the substantial conflicting evidence as to the location of Mrs. Stewart when she was struck. *Langan v. Valicopters, Inc., supra.*

II

Second, error is assigned to instruction No. 10:

You are instructed that as a matter of law the design of the highway lighting system and the Snohomish River Bridge does not constitute negligence.

Mrs. Stewart presented expert testimony that the design of the bridge and the lighting system was defective in several respects. Other than a change in the type of guardrail and narrowing shoulders of approximately 1 foot, there was nothing to indicate that a motorist was approaching or on a bridge. There was no sign indicating a bridge. Further, the bridge was unlighted; the full freeway lighting ended abruptly at the bridge entrance. Experts, pointing to a curve at the bridge entrance, stated that good practice required at least transitional lighting to allow adjustment in vision, particularly in view of the curve. Despite this evidence the court gave the instruction on the basis that there was discretionary governmental immunity as to the design of the bridge and the lighting system.

■ We start with the proposition that discretionary governmental immunity in this state is an extremely limited exception. *Haslund v. Seattle*, 86 Wn.2d 607, 619, 547 P.2d 1221 (1976). RCW 4.92.090, in general terms, withdrew state immunity. In *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 254, 407 P.2d 440 (1965), we recognized that, as a matter of public policy, not every act, omission or decision of government should subject the governmental unit to potential liability. We postulated four preliminary questions at page 255:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy . . . as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act . . . require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite . . . authority . . .?

Only if all four questions can be clearly and unequivocally answered in the affirmative can the act, omission or decision be classified as a discretionary governmental process and nontortious. We noted that if one or more of the questions called for or suggest a negative answer, then further inquiry may be necessary, depending on the facts or circumstances involved.

■ We refined discretionary immunity in *King v. Seattle*, 84 Wn.2d 239, 246, 525 P.2d 228 (1974), where we held:

> Immunity for "discretionary" activities serves no purpose except to assure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government. Accordingly, to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in "discretionary activity" is irrelevant if, in a given case, the employee did not render a considered decision.

We believe that these facts do not justify discretionary immunity under tests 1 and 2 of *Evangelical* as refined in *King*. The decisions to build the freeway, to place it in this particular location so as to necessitate crossing the river, the number of lanes—these elements involve a basic governmental policy, program or objective. However, these are not the elements which are challenged by appellant. Rather, appellant argues that once those governmental decisions were made they had to be carried out without negligent design of the bridge or of the lighting system. Negligent design was not essential to the accomplishment of the policy, program or objective.

■■ The State argues that adoption of a design necessarily involves a judgmental choice. The *King* test requires more. There was no showing by the State that it considered the risks and advantages of these particular designs, that they were consciously balanced against alternatives, taking into account safety, economics, adopted standards, recognized engineering practices and whatever else was appropriate. The issues arising from the evidence as to negligent design should have been submitted to the jury. *See generally* Bohrnsen & Ryan, *Tort Law in Washington: A Legal Chameleon,* 11 Gonzaga L. Rev. 73, 80 (1975); Peck, *Laird v. Nelms: A Call for Review and Revision of the Federal Tort Claims Act,* 48 Wash. L. Rev. 391, 415–18 (1973).

Other jurisdictions have reached similar results. In *Lewis v. State,* 256 N.W.2d 181, 195 (Iowa 1977), the court said:

> In the present case plaintiffs' claims do not focus on the decision to build Interstate 29, a discretionary function, but on the alleged negligence of the State in *implementing* that decision. Consequently, [the statute] is not preclusive of plaintiffs' right to relief.

A similar distinction was drawn in *Andrus v. State,* 541 P.2d 1117, 1120 (Utah 1975):

> The decision to build the highway and specifying its general location were discretionary functions, but the preparing of plans and specifications and the supervision of

the manner in which the work was carried out cannot be labeled discretionary functions.

*State v. Webster,* 88 Nev. 690, 693–94, 504 P.2d 1316 (1972) states:

> Once the decision was made to construct a controlled–access freeway . . . the State was obligated to use due care to make certain that the freeway met the standard of reasonable safety for the traveling public. This is the type of operational function of government not exempt from liability if due care has not been exercised and an injury results.

*Accord, Breed v. Shaner,* 57 Haw. 656, 667, 562 P.2d 436 (1977); *Indiana State Highway Comm'n v. Clark,* 371 N.E.2d 1323, 1327–28 (Ind. Ct. App. 1978); *Jones v. State Highway Comm'n,* 557 S.W.2d 225, 230 (Mo. 1977).

The State relies heavily upon *Weiss v. Fote,* 7 N.Y.2d 579, 589, 167 N.E.2d 63, 200 N.Y.S.2d 409 (1960), but even that case recognizes that discretionary immunity in planning and execution is not absolute. It held:

> [L]iability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis.

*Cf. Tomassi v. Union,* 46 N.Y.2d 91, 385 N.E.2d 581, 412 N.Y.S.2d 842, 844 (1978), which refers to a duty *to construct* and maintain highways in a reasonably safe condition "taking into account such factors as the traffic conditions apprehended, the terrain encountered, fiscal practicality and a host of other criteria . . ."

*See* Note, *State Liability for Highway Defects,* 27 Emory L.J. 337 (1978).

### III

The third issue is whether the court erred in its instructions regarding the emergency doctrine. The court instructed:

> A person who is suddenly confronted by an emergency through no negligence of his own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonable careful person placed in such a

position might make, is not negligent even though he does not make the wisest choice.

This instruction applies only to the conduct of the drivers Overton, Graafstra and Larsen.

Instruction No. 24.

The court thus denied Stewarts the benefit of having their actions judged by the jury as being done in response to an emergency. This instruction had been worked out prior to settlement with Graafstra and Larsen. The rule is:

> The emergency doctrine applies after a person is placed in a position of peril and must choose between courses of action to avoid the peril. The effect of the doctrine is to excuse "an unfortunate human choice of action that would be subject to criticism as negligent were it not that the party was suddenly faced with a situation which gave him no time to reflect upon which choice was the best." . . . *The doctrine is inapplicable if the emergency is brought about by the negligence, in whole or in part, of the person seeking its benefit.*

(Citation omitted. Italics ours.) *Haynes v. Moore,* 14 Wn. App. 668, 669, 545 P.2d 28 (1975).

To so instruct, the court had to determine as a matter of law that Stewarts were either not confronted with an emergency or that it was an emergency brought about in whole or in part by their own actions. The latter is most likely, although appellant argues the whole sequence of events was an emergency not of appellant's making.

We need not decide whether Mrs. Stewart's "spin-out" when hitting a slick spot was an emergency not of her own making. That event had come to an end when their car came to rest blocking most of two lanes of travel. Thereafter, the Stewarts had time to locate the car jack, discuss what to do, obtain their flashlight and send Mrs. Stewart some distance down the freeway to direct oncoming traffic. While the interval of time is not clear, the testimony was that she successfully directed five or six cars around her stalled vehicle. No effort was made to try to drive, push or otherwise maneuver the vehicle out of the lanes of traffic. It cannot be said that the Stewarts were "suddenly faced with

a situation which gave [them] no time to reflect upon which choice was the best." *Haynes v. Moore, supra.* There was no error in the emergency instruction.

IV

The fourth issue concerns the court's instructions that:

A state has a duty to exercise ordinary care in the maintenance and repair of its public highways and to keep them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety.

Inherent in this duty to exercise ordinary care is the alternative duty either to eliminate a hazardous condition, if one exists, and its existence is known, or should have been known to the State in the exercise of reasonable care, or to adequately warn the travelling public of its presence.

Instruction No. 18.

You are instructed that the State of Washington has a right to assume that persons using the highway will use it in a proper manner and exercise ordinary care for their own safety.

Instruction No. 16.

Appellant in her brief states about instruction No. 18: "[A]lthough it is a correct statement of the law it is overly general and incomplete." Appellant, in addition to assigning error to No. 18, asserts error for failure to give her proposed additional instruction No. 5.[1]

---

[1]Appellant's proposed instruction No. 5 reads:

"The State of Washington is required by law to exercise ordinary care in the repair and maintenance of its public highways keeping them in such condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and using ordinary care for their own safety.

"Inherent in this duty to exercise ordinary care is the alternative duty either to eliminate a hazardous condition, if one exists, and its existence is known, or should have been known to the State in the exercise of reasonable care, or to adequately warn the travelling public of its presence.

"These foregoing duties include the duty to maintain reasonable warning signs, markings or other devices if the situation on or alongside the highway, even though outside the traveled portion of the highway, is inherently dangerous, or is

■ CR 51(f) requires that, when objecting to the giving or refusing of an instruction, "[t]he objector shall state distinctly the matter to which he objects and the grounds of his objection". The purpose of this rule is to clarify, at the time when the trial court has before it all the evidence and legal arguments, the exact points of law and reasons upon which counsel argues the court is committing error about a particular instruction. *Dravo Corp. v. L.W. Moses Co.,* 6 Wn. App. 74, 83, 492 P.2d 1058 (1971); *see State v. McDonald,* 74 Wn.2d 141, 145, 443 P.2d 651 (1968). Therefore, the objection must apprise the trial judge of the precise points of law involved and when it does not, those points will not be considered on appeal. *Haslund v. Seattle, supra* at 614–15; *Powers v. Hastings,* 20 Wn. App. 837, 848, 582 P.2d 897 (1978).

Appellant's counsel, in excepting to the failure to give proposed No. 5, merely stated: "Regarding this court's failure to give instructions proposed by plaintiff Stewart, plaintiff Stewart would respectfully take exception to the following: Stewart's proposed instruction No. 5, which, again, sets out the duty of the State in regard to the design of the bridge and the lighting functions, as well." Neither theory nor authority was cited to the court as required by the rules. Appellant's inadequate objection failed to pre-

---

of such a character as to mislead a person using said highway exercising reasonable care.

"While the State has no duty to provide freeway lighting, once it undertakes to furnish such a lighting system, it has a duty of reasonable care in the design, installation and maintenance of such a system so as not to cause or contribute to causing a hazardous condition.

"Whether or not the lighting, markings, warning signs or other devices are reasonable depends upon the conditions that exist at the particular area involved, and whether or not reasonable protection is afforded those using the highway, and whether or not such devices do reasonably accomplish the purpose for which they were designed under conditions that could reasonably be anticipated by the State of Washington Highway Department at the particular point involved."

serve its claim of error regarding instruction No. 18 and proposed No. 5.

Appellant weaves into the above argument alleged error in giving instruction No. 16, as quoted above. Again the exception was not adequate to call to the trial court's attention the cases and theories set forth in the brief on appeal.[2] Appellant's claim of error about No. 16 was not preserved. *Haslund v. Seattle, supra.*

Nonetheless the State is correct in arguing that if the State were required to anticipate and protect against all imaginable acts of negligent drivers, it would become an insurer against all such acts. Rather its duty is to maintain its roads in such a condition that they are reasonably safe for persons using them in a proper manner and exercising ordinary care for their own safety. *Provins v. Bevis,* 70 Wn.2d 131, 422 P.2d 505 (1967); *Meabon v. State,* 1 Wn. App. 824, 463 P.2d 789 (1970).

---

[2]Appellant's inadequate exception reads:

"I would then take exception to Instructions No. 15 and No. 16. I think that these could be combined quite properly in a single instruction, but let's turn, first to No. 16. This says:

"'You are instructed that the State of Washington has a right to assume that persons using the highway will use it in a proper manner and exercise ordinary care for their own safety.' This is really repetitious of the concept that's embodied in the previous Instruction, No. 15, which simply says that each person has a right to assume that other persons thereon would use ordinary care. I think if we changed the word 'person' to 'each party' has the right to assume that persons using the highway would use ordinary care, we're not getting into a situation where we have to repetitiously say, well, first of all, the drivers have a right to assume that people are going to use reasonable care, and, secondly, that the State of Washington has the right to assume that the drivers are going to use reasonable care. In addition, I think No. 16 is not a complete statement. It simply says the State can assume that people will use ordinary care. I don't think that's a correct statement. The law in the matter is the State has a right to assume that until, in the exercise of ordinary care, they should know that people are going to be making a certain type of mistake out on the highway. So, really, I am objecting to No. 16 in its entirety and simply suggesting that it can be rather easily—the correct statement of what No. 16 is really all about, but incorrectly stated, can be added to Instruction No. 15 to make a correct statement that will not overemphasize a specific point."

## V

Next appellant groups four assignments of error in the category of duty of care of the following drivers.

■ First, error is claimed for failure to give this proposed instruction:

One is charged with the duty of seeing that which he would have seen had he been exercising ordinary care.

Appellant's proposed instruction No. 9. Neither in taking exception to the failure to give nor in her brief does appellant cite any authority for the proposition that it was prejudicial error to not give the proposed instruction. The brief does not cite any reference to facts justifying this instruction. It need not be considered. *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Second, appellant proposed an instruction on apportionment of negligence as follows:

Where the negligence of two or more parties has combined to bring about harm to a complaining party, and one or more of the parties seeks to limit his liability on the ground that the harm to the complaining party is capable of apportionment, the burden of proof as to the apportionment is upon the party who seeks to limit his own liability.

Appellant's proposed instruction No. 13.

■ Appellant's exception for failure to give this proposal was simply that "[W]e feel [it] is a correct statement and should be given." No facts, theory or authority were cited. This is inadequate. *Haslund v. Seattle, supra.* In appellant's brief she asserts that it is supported by the facts of the case, but makes no reference to the record. This is inadequate. *See* RAP 10.4(f). Additionally there is no showing that one or more parties sought to limit liability by apportionment as set forth in the proposed instruction. There was no error.

Third, error is assigned to the court's instruction which stated:

The law does not require the driver of a motor vehicle to drive at a speed that will enable him to stop his vehicle within the radius of his headlights.

Instruction No. 30.

Appellant concedes this is a correct statement of the law, but contends no such instruction should be given. No authority is cited for its alleged inappropriateness and it need not be considered. *State v. Young, supra.* In any event there was much testimony about headlights and illumination under the conditions present here as well as evidence as to reaction time in stopping distances under the road conditions involved. There was no error.

Fourth, appellant objected to the instruction given by the court which read:

You are instructed that the excessive speed of an automobile, if any, is not the proximate cause of damage if the driver of such automobile was where he had a right to be and the driver would not have had sufficient time to avoid the collision had he been driving at a lawful speed.

Instruction No. 21.

No authority was cited in the exception and none is provided in the brief as to why this was error. In fact, appellant's exception conceded it was a correct statement but claimed it overemphasized defendants' theory of the case. There was no error as the giving of this instruction was clearly within the trial court's discretion.

## VI

Next, appellant assigns error to five of the court's instructions claiming there was no evidentiary basis for them.

First is claimed error in setting forth the statutory requirements for headlights:

With respect to headlamps on motor vehicles, two statutes of this state provide:

"(1) The headlamps on motor vehicles shall be so arranged that the driver may select at will between distributions of light projected to different elevations and such lamps may be so arranged that such selection

can be made automatically subject to the following limitations:

"(a) There shall be an uppermost distribution of light, or composite beam, so aimed and of such intensity as to reveal persons and vehicles at a distance of three hundred fifty feet ahead.

"(b) There shall be a lowermost distribution of light, or composite beam, so aimed and of sufficient intensity to reveal persons and vehicles at a distance of one hundred feet ahead.

"(2) Whenever a driver of a vehicle approaches another vehicle from the rear within three hundred feet such driver shall use the lowermost distribution of light."

Instruction No. 29.

There are two reasons why the instruction was proper. First, there was testimony that driver Overton initially saw appellant's vehicle when her lights were on low beam. Also appellant argued that the following car should have seen the Stewart vehicle in time to avoid the collision. Taken as a whole, the instruction sets forth the proper duty of driving with headlights on low beam. Appellant relies upon *Haynes v. Moore,* 14 Wn. App. 668, 545 P.2d 28 (1975). That case is distinguishable. There an instruction was based on an Oregon statute as to the sufficiency of headlights. There was no evidence that the headlights involved did not meet the statutory requirement so the instruction was erroneous. Here, the statute was relevant as to the lawfulness of driving with headlights on low beam.

Second, appellant objected to the court's instruction that:

The maximum statutory speed limit here involved was 55 miles per hour.

Instruction No. 22.

 Obviously the instruction was a correct statement of the statutory speed limit, but appellant argues that there was no evidence that any driver was exceeding the statutory maximum. However, the court gave another instruction as to the duty to drive at a reduced speed which is reasonable and prudent under the circumstances. Therefore

it was proper to instruct as to reduced speed. No error was made.

Third, appellant objects to the court's instruction that:

> A statute provides that it shall be unlawful for the owner, or any other person, in employing or otherwise directing the operator of any vehicle to require or knowingly to permit the operation of such vehicle upon any public highway in any manner contrary to the law.

Instruction No. 32.

Appellant argues that this was an effort to impute the negligence of Mrs. Stewart to her husband. The court gave an instruction forbidding imputation of negligence between spouses. We agree with respondents that this instruction was proper when coupled with the court's separate instruction regarding the prohibition that no person shall stop, stand or park a vehicle upon a bridge. RCW 46.61-.570(1)(a)(vii). It is apparent from the record that Mr. Stewart, when the car came to rest, assumed control over it. The instruction was appropriate in view of the fact that Mrs. Stewart had been driving and after striking the guardrail the husband undertook a different role as to the vehicle.

Fourth, appellant assigns error to the court's instruction No. 17 that:

> You are instructed that one driving at night, outside cities and towns, in the absence of a red or other light to warn him to the contrary, can assume that the traveled portion of the road ahead of him is unobstructed.

It is contended that there was no evidence that the accident scene was outside the city of Everett. No authority or argument is presented as to why this was prejudicial. While there apparently was no direct testimony as to the location of the city limits, there was circumstantial evidence that the scene was outside the city, for example that the freeway passes through Everett south of the bridge and that the illumination changed because the freeway was in a rural area. There was no error.

Fifth, error is assigned to an instruction that:

You are instructed that if your verdict is in favor of both Dorothy Stewart personally and as personal representative of the estate of Floyd Stewart, Jr. and if you find that Dorothy Stewart has lost future income by reason of her injuries, you shall reduce any such loss by that amount which Floyd Stewart would have earned if he had continued to live through his normal work expectancy period.

Instruction No. 36.

Appellant concedes this is not reversible error since the appeal relates only to issues of liability. No authority is cited for the alleged error and we do not consider it. *State v. Young, supra.*

## VII

Appellant Stewart next complains of the exclusion of certain evidence. At one point in the brief she refers to exclusion of five items of offered testimony, but only assigns error to the exclusion of one matter which is testimony concerning a person jumping to his death from this bridge approximately 3 years prior to this accident. Appellant cites only one place in the record for this exclusion. In fact the court considered it seven times.

We have held that evidence of a prior accident which occurred under the same or substantially similar circumstances is admissible for the purpose of showing a dangerous or defective condition and the defendant's notice of such condition. *Toftoy v. Ocean Shores Properties, Inc.,* 71 Wn.2d 833, 835, 431 P.2d 212 (1967), and cases cited therein. However, since it may inject collateral issues, related to the prior accident, admission of such testimony is largely discretionary. *Blood v. Allied Stores Corp.,* 62 Wn.2d 187, 189, 381 P.2d 742 (1963); *Hinkel v. Weyerhaeuser Co.,* 6 Wn. App. 548, 555, 494 P.2d 1008 (1972). The trial court's admission or exclusion of evidence of prior accidents should be reviewed only for abuse of discretion. E. Cleary, *McCormick's Evidence* § 200, at 473 (2d ed. 1972).

Here appellant Stewart made no formal offer of proof. What can be gleaned from the record is that the proposed

witness came upon an accident on this bridge, in a snowstorm, which occurred in daylight as contrasted to a nighttime accident here. Apparently what the witness knew of someone going over the bridge came not from observation but knowledge that there had been an accident and he had later read in the newspaper that someone had jumped into the river. After that accident and before the one here, the roadway surface had been changed by "grooving" the pavement. The other accident occurred in the southbound lanes while this was in the northbound freeway.

Thus there was a substantial question of similarity of circumstances. However, the trial court carefully weighed the matter, considered the cases and ruled that the "probability of misuse substantially exceeds the potential relevancy of the prior accident." This was within his discretion. Rather than being an abuse of discretion, the record shows a careful, thoughtful and balanced exercise of that discretion and the evidence was properly excluded. *Hinkel v. Weyerhaeuser, supra.*

## VIII

Finally, appellant Stewart assigns error to the order in which the proof was presented. The Overton and Stewart cases had been consolidated prior to trial. Overton was permitted to proceed as a plaintiff and then Stewart followed as a plaintiff. Apparently this order of proof was determined in a pretrial order. Appellant has not made that order a part of the record. Appellant has not cited any place in the record where she objected to the trial judge on this point. In fact it is only called to the trial judge's attention on the first day of trial:

[Stewart's Counsel]: Well, I obviously don't necessarily agree with that ruling [as to order of proof], but I think it's the one we've all been operating under here, as far as knowing when our witnesses should be ready to go.

THE COURT: So, actually, everybody is in concurrence that we stay, as far as trial goes, in the order that Judge Hansen directed. Is that correct?

[Stewart's Counsel]: I think that will be fine.

THE COURT: All right, there is no issue over that.

Appellant Stewart cites no authority as to why this was prejudicial, we find none and there was no error.

The judgment in the matter of Stewart v. State of Washington is reversed. The judgment in the matter of Overton v. Stewart is reversed. The judgment in the matter of Stewart v. Overton is affirmed. The reversed matters are remanded for trial.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Reconsideration denied September 21, 1979.